IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RICK HOMANS,

    Plaintiff,

vs.                                                                                   No. CIV 01-917 MV/RLP

THE CITY OF ALBUQUERQUE, a Municipal
Corporation and MARGIE BACA ARCHULETA
in her capacity as Clerk of the City of Albuquerque,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's Motion for a Temporary Restraining Order, filed August 16, 2001 **[Doc. No. 7]**. The Court ruled from the bench at the hearing on August 20, 2001, that the motion for a temporary restraining order ("TRO") would be granted. This order sets forth the Court's reasoning for granting the TRO.

## BACKGROUND

The facts of this case are not in dispute. Rick Homans is a duly qualified candidate for mayor in the City of Albuquerque, New Mexico, whose name will appear on the printed ballot for the mayoral election scheduled to be held on October 2, 2001. Homans brings this action seeking a declaratory judgment that Article XIII, Section 4(d)(2) of the Albuquerque City Charter violates the First Amendment to the United States Constitution. That section states:

    (d)    No candidate shall allow contributions or make expenditures in excess of the following for any election:

1

\*   \*   \*

> (2)   To a candidate for the office of Mayor contributions or expenditures equal to twice the amount of the annual salary paid by the City of Albuquerque to the mayor as of the date of filing of the Declaration of Candidacy.

The salary of the current mayor is $87,360.00. Therefore, the expenditure limitations for the October 2, 2001 mayoral election are $174,720.00. Under the terms of the City Charter, Homans is subject to a $500 fine for each violation of the expenditure limitations under Article XIII, Section 4(d)(2). In addition, if Homans wins the election, he is subject to potential public reprimand and removal from office by the Albuquerque City Council.

Before the candidates registered for their candidacy for mayor, there was a preliminary injunction in place in state court against the expenditure limitations at issue here. When candidates went to pick up their packets in order to run for mayor, they were told that the expenditure limits would not be enforced. The state court action was brought by three voters. A candidate intervened in the action and argued that the voters did not have standing to bring the case. The state court agreed and gave the candidates twenty days to join the lawsuit before it would be dismissed for lack of standing. No candidate joined, and the case was dismissed on August 15, 2001.

Homans claims that he is already in violation of the expenditure limits. Relying on the assertion that the limits would not be enforced in this election, he has already spent more than the limits allow. Homans claims that he will have to stop campaigning and close his campaign headquarters if the expenditure limits are left in place.

**STANDARD OF REVIEW**

The district court may grant a temporary restraining order or a preliminary injunction if the moving party shows: "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm in the absence of the injunction; (3) proof that the threatened harm outweighs any damage the injunction may cause to the party opposing it; and (4) that the injunction, if issued, will not be adverse to the public interest." *Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Social & Rehabilitation Servs.*, 31 F.3d 1536, 1542-43 (10th Cir. 1994) (*citing Autoskill Inc. v. Nat'l Educ. Support Sys., Inc.*, 994 F.2d 1476, 1487 (10th Cir.), cert. denied, 510 U.S. 916, 114, 1543 S.Ct. 307, 126 L.Ed.2d 254 (1993); *Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1198 (10th Cir.1992)). "Because a [TRO or] preliminary injunction is an 'extraordinary remedy . . . the right to relief must be clear and unequivocal." *Kansas Health Care*, 31 F.3d at 1543 (citing *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991)).

**DISCUSSION**

A.  Likelihood of Success on the Merits

Plaintiffs challenge the limit on campaign expenditures as unconstitutional under the First Amendment. In *Buckley v. Valeo*, 424 U.S. 1 (1976), the Supreme Court was faced with challenges to two provisions of the Federal Election Campaign Act: one that limited the contributions individuals could make, and the other that limited the amount of money a candidate could spend. The Court held that the contribution limits were constitutional because the government has a compelling interest in eliminating corruption (or its appearance) in the electoral process, and the restrictions did not completely preclude individuals or groups from expressing

3

their support of a particular candidate. *See id.* at 26-29. However, the Supreme Court held that restrictions on individual expenditures were not justified by the government's interest in battling corruption because independent spending in candidate elections presents little risk of quid pro quo bargaining. *See id.* at 45- 47.

In subsequent Supreme Court cases interpreting and applying *Buckley*, the Supreme Court has identified only one legitimate and compelling governmental interest that justifies restrictions on campaign financing: the prevention of corruption or appearance of corruption. *Kruse v. City of Cincinnati*, 142 F.3d 907, 913 (6th Cir. 1998). As expounded upon in later cases, this justification was held inadequate to support restrictions on campaign expenditures because although preventing corruption is a legitimate and compelling interest, the limitation on campaign expenditures is not a narrowly tailored remedy. *See Kruse*, 142 F.3d at 915 (citing *See Federal Election Comm'n v. Nat'l Conservative Political Action Comm.*, 470 U.S. 480 (1985) ("NC-Pac") and *Colorado Republican Fed. Campaign Comm. v. Fed. Election Comm'n*, 518 U.S. 604 (1996)). The spending of money legally raised by candidates poses no risk of quid pro quo corruption and campaign spending limits cannot be justified by the anti-corruption rationale. *See id.*

The challenged provisions of Albuquerque's election code are limits on individual expenditures; therefore, they fall within the ambit of the Supreme Court's ruling in *Buckley*. The City has presented justifications for the spending limits that this Court finds are compelling and legitimate. The City stated at the hearing that over the past twenty years, it has seen an "arms-race" mentality building in federal and state elections. This frenzy to raise as much money as possible both erodes public confidence in the electoral system and detracts from incumbents'

ability to effectively perform their job responsibilities.  The public does not have confidence in the electoral system because without the expenditure limits, there is no guarantee or even message to the public that "big money" does not matter.  Moreover, with spending being limitless during a campaign, incumbents spend an inordinate amount of their time raising funds to, as the City stated, "raise the war chest" so that they can fight off challenges from candidates with a lot of money.  The Court agrees with the City that this focus on fund-raising undermines the representative fabric of our democracy, in that the person elected to perform a service for the City must now detract from her responsibilities and raise money.  However, while the City offered legitimate and compelling reasons for campaign expenditure limitations, it did not present sufficient evidence at the hearing that the campaign expenditure limitations are narrowly tailored to effect those interests.

The City also suggested that in *Buckley*, the Supreme Court was speculating about the injurious effects that campaign spending limits would have on First Amendment freedoms.  The City contends that this case is distinguishable from *Buckley* in that spending limits have been in place in Albuquerque for twenty-five years.  Therefore, there is a lengthy history from which to evaluate whether in fact spending limits do abridge First Amendment freedoms.  Without the benefit of that evidence at this point, the Court must conclude that this case does not present a different situation from that in *Buckley*.  Therefore, the Court finds that Plaintiff has established a likelihood of success on the merits that the expenditure limits are unconstitutional under the First Amendment.

B.  Irreparable Harm

A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain. *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) (citing *Tri-State Generation & Transmission Assoc., Inc., v. Shoshone River Power, Inc.*, 874 F.2d 1346, 1354 (10th Cir. 1989).... "When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Id.* (citing 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (2d ed.1995)).  Plaintiff alleges that his First Amendment right of free speech will be infringed if the Charter is not enjoined. Therefore, plaintiff has shown irreparable harm.

C.  Balance of Harms

The balance of harms weighs in favor of Mr. Homans.  He will have to cease his campaign, and thus be restricted in his speech, if enforcement of the Charter is not enjoined.  If he exercises his First Amendment rights, he will face a fine for each violation.  If he is successful in his candidacy for mayor, he will be subject to possible public reprimand and removal from office. On the other side, the Court finds that there is harm to the defendants if the injunction is issued. The city council of Albuquerque has enacted a legislative scheme designed to ensure fairness in the electoral process.  However, the fact that an injunction was in effect until August 15, 2001 weighs against the City.  They, as well as the other candidates, have been operating as though the Charter was not in effect.  Therefore, as one of the purposes of a temporary restraining order or preliminary injunction is to preserve the status quo, the status quo has been that the limits have

6

not been in effect.  The Court finds that the balance of harms weighs in favor of Mr. Homans.

D.  Public Interest

The public interest favors the injunction, although the Court is most troubled by this prong of the test.  On Mr. Homans' side are the public's interest in the First Amendment guarantees to freedom of speech.  On the City's side, however, are concerns almost as equally weighty and legitimate, as recounted above.  However, in weighing the two interests, the Court must find that the public's interest in freedom of speech is of more profound importance.

**CONCLUSION**

The Court has found that Mr. Homans has proved a likelihood of success on the merits in that the City's Charter is unconstitutional under *Buckley v. Valeo*.  Mr. Homans has also proved that he will suffer irreparable harm if the Charter is not enjoined.  While the balance of harms and public interest are more difficult issues for the Court to decide, the Court ultimately finds that these two factors weigh in Mr. Homans' favor.  Therefore, the Court will issue a temporary restraining order against Article XIII Section 4(d)(2) of the Albuquerque City Charter in the upcoming mayoral election, scheduled for October 2, 2001.

**IT IS HEREBY ORDERED** the motion for a temporary restraining order is granted.

Dated this 29th day of August, 2001.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT COURT

Attorney for Plaintiff
Rick Alvidrez

Attorneys for Defendant
Dan Ramczyk
Randy Autio