UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

02 MAR -4 PM 4:30

RICK HOMANS,

    Plaintiff,

vs.                                                        No. CIV-01-917 MV/RLP

THE CITY OF ALBUQUERQUE, a Municipal
Corporation and FRANCIE D. CORDOVA,
in her capacity as Clerk of the City of Albuquerque,

    Defendants.

## PROPOSED FINDINGS OF FACT AND
## CONCLUSIONS OF LAW OF PLAINTIFF RICK HOMANS

COMES NOW Plaintiff, Rick Homans ("Homans"), by his counsel of record, Keleher & McLeod, P.A. (Thomas C. Bird and Richard L. Alvidrez), and pursuant to the Court's Order Granting Joint Motion for Admission of Evidence, Setting a Briefing Schedule and Expedited Determination on the Merits, submits his proposed findings of fact and conclusions of law in the above-numbered and entitled cause.

The parties have agreed to submit this matter to the Court for a determination on the merits based upon the record developed in connection with Homans' Motion for Temporary Restraining Order and Motion for Preliminary Injunction. In addition, the parties have filed a Joint Stipulation of Certain Evidence for Expedited Determination on the Merits ("Joint Stipulation") to supplement the evidentiary record before the Court. Reference to the record herein includes references to the Joint Stipulation which is cited as "(Stipulation, ¶ ___)" or "(Stipulation, Exhibit "___")" in reference to specific paragraphs or exhibits to the Joint



Stipulation. Other references to the record are to the appendix prepared in connection with the appeal to the Tenth Circuit Court of Appeals of the denial of Homans' Motion for Preliminary Injunction. References to the appendix are to the number of the specific pleading in the appendix and the page or exhibit and paragraph in the referenced pleading. For example "(App. 3; Ex. A; ¶ 9)" refers to paragraph 9 of the Exhibit "A" of the third pleading in the appendix. In the example just cited, this is paragraph 9 of the Rick Homans Affidavit that is attached as Exhibit "A" to the memorandum brief in support of plaintiff's motion for preliminary injunction. For the convenience of the Court, an index of the appendix is attached hereto as **Exhibit "A"**.

Homans respectfully requests that the Court adopt the following findings of fact and conclusions of law:

## **FINDINGS OF FACT**

### **Jurisdictional Findings**

1. This Court has jurisdiction over the parties and the subject matter of this lawsuit, and venue is proper in the United States District Court for the District of New Mexico.

2. Homans is a resident of the City of Albuquerque, New Mexico. (Stipulation, ¶ 1)

3. Defendant City of Albuquerque ("City"), is a municipal corporation organized under the laws of the state New Mexico. (Stipulation, ¶ 2)

4. Francie D. Cordova ("Cordova") is the Clerk of the City of Albuquerque ("Clerk") and is charged with enforcement of certain ordinances relating to city elections. Cordova succeeded Defendant Margie Baca Archuleta as Clerk on December 1, 2001. (Stipulation, ¶ 3)

2

## The City Charter Election Provisions and Campaign Expenditure Limitations

5. The City first enacted limits on candidate spending in mayoral and city council elections through a charter amendment approved by City voters in 1974. (Stipulation, ¶ 12)

6. Limits on candidate spending remained in effect for each mayoral and city council election held from 1974 through 1995. (Stipulation, ¶ 13)

7. The spending limits were temporarily enjoined for the 1997 municipal elections by a court order in *Murphy v. City of Albuquerque*, No. CV-97-0007826 (2d Judicial District). (Stipulation, ¶ 14)

8. The spending limits were restored for the 1999 city council elections after the plaintiffs in *Murphy* withdrew their lawsuit through a stipulated dismissal. (Stipulation, ¶ 15)

9. The City Charter was amended in 1999 to permit candidates for mayor and city council to spend up to twice the annual salary of the office in their election campaigns. Prior to that, candidates were limited to spending an amount equal to the annual salary of the office. (Stipulation, ¶ 16)

10. Article XIII, §4(d)(2) of the City Charter restricts total contributions and expenditures by mayoral candidates as follows:

> (d) no candidate shall allow contributions or make expenditures in excess of the following for any election:
>
> ***
>
> (2) to a candidate for the office of Mayor, contributions or expenditures equal to twice the amount of the annual salary paid by the City of Albuquerque to the Mayor as of the date of filing of the Declaration of Candidacy.

(Stipulation, ¶ 8)

3

11. The salary of the City mayor at the time of the candidates' filing of their declarations of candidacy was $87,360 per year, resulting in a campaign expenditure limit for a City mayoral campaign of $174,720 under Article XIII, §4 (d)(2). (Stipulation, ¶ 9)

12. The City Charter and the Rules and Regulations of the Board of Ethics and Campaign Practices gives the Board the power to fine a candidate up to $500 for each violation of Article XIII, § 4 (d)(2), to issue a public reprimand to the candidate and to recommend to the City Council that a candidate duly elected by the voters be removed from office. (Stipulation, ¶ 10)

13. Defendants, City and Clerk contend that Article XIII, §4(d)(2) of the City Charter is constitutional and announced that they would enforce the contribution and expenditure limitations against candidates for the office of mayor, including Homans, in the October 2, 2001 municipal election. Defendants City and Clerk maintain that they will enforce the contribution and expenditure limitations in future municipal elections. (Stipulation, ¶ 11)

14. Article XIII(e) of the City Charter restricts contributions to mayoral campaigns to no more than five percent (5%) of the annual salary for mayor of the City. (App. 3; Ex. A; ¶ 9)

15. Article II, §6 of the Albuquerque City Charter requires that a run-off election be held for any municipal election where a candidate receives fewer than the 40% of the votes cast for the particular office in question. (Stipulation, ¶ 22)

16. Article II, §6 of the Albuquerque City Charter relating to City run-off elections was invalidated in 1997 as violative of the New Mexico Constitution. (Stipulation, ¶ 23)

### The Homans' Mayoral Campaign

17. The City was scheduled to have a municipal election, including an election for the office of mayor, on October 2, 2001. (Stipulation, ¶ 4)

18. Homans was a candidate for the office of mayor of the City having filed with the City both a declaration of candidacy on August 7, 2001 and petitions with in excess of 5,100 valid signatures of registered City voters during the period between July 12 and July 21, 2001. (Stipulation, ¶ 5)

19. Homans was a duly qualified candidate for the office of mayor of the City with sufficient signatures to be listed as a candidate on the printed ballot for the mayoral election held on October 2, 2001. (Stipulation, ¶ 6)

20. In furtherance of his candidacy for mayor, Homans undertook various fundraising and campaign activities during the several months prior to the October 2, 2001 election. (Stipulation, ¶ 7)

21. Prior to Homans' registration of his candidacy for mayor of the City, a state district court issued a preliminary injunction which prevented enforcement of the campaign expenditure limitations under Article XIII, § 4(d)(2) of the City Charter. (Memorandum Opinion and Order Denying Motion for Preliminary Injunction, p. 2 and App. 3; Ex. "C"; *Homans v. City of Albuquerque*, 264 F.3d 1240, 1245 (10th Cir. 2001))

22. When Homans received the informational materials from the City regarding the municipal election, a City employee informed Homans verbally that the expenditure limits under Article XIII, §4(2) of the City Charter would not be enforced. (Memorandum Opinion and Order Denying Motion for Preliminary Injunction, p. 2 and App. 3; Ex. "C"; *Homans v. City of Albuquerque*, 264 F.3d 1240, 1245 (10th Cir. 2001))

23. As a result of his campaign activities, Homans received campaign contributions and pledges in excess of the spending limitations specified under Article XIII, §4(d)(2) of the City Charter. (App. 3; Ex. "A", ¶ 8)

24. Homans purchased and paid for certain campaign expenses and advertising in various media, including television, radio, billboard, the internet, and other media, in excess of the spending limitations under Article XIII, §4(d)(2) of City Charter (App. 3; Ex. "A", ¶¶ 8 and 11)

25. Homans adhered to the campaign contribution limitation under Article XIII (e) that restricts total contributions from any one person no more than five percent (5%) of the annual salary for mayor. (App. 3; Ex. "A", ¶9)

26. As part of his campaign effort, Homans launched a campaign of "Great Ideas for Albuquerque." The Homans' "Great Ideas" campaign included such proposals as eliminating the gross receipts tax on medical services to encourage healthcare providers to remain in the City; restoration of the endangered Bosque area adjacent to the Rio Grande; and a "311" telephone line to provide citizens with assistance in dealing with City departments and agencies, among other proposals. (App. 3; Ex. "A";¶ 10)

27. Homans procured office space and hired campaign workers to assist in his campaign for mayor. (App. 3; Ex. "A", ¶ 12)

28. Homans' campaign for mayor was his first attempt at elected public office. (App. 3; Ex. "A", ¶ 14)

29. Homans' initial polling indicated that only two percent (2%) of City registered voters considered voting for him as mayor. (App. 3; Ex. "A", ¶ 14)

30. In order run a successful political campaign that allows a candidate to get his or her message out to the over 220,000 registered voters in the City, a candidate needs to maintain a sustained frequency rating for his or her campaign message with the voters. (App. 3; Ex. "B", ¶5)

31. A frequency rating is the repeated exposure of the candidates' message to the electorate. (App. 3; Ex. "B", ¶ 5)

32. An effective media campaign with a sufficient frequency rating to reach a substantial number of registered voters in the City requires an integrated approach to advertising. (App. 3; Ex. "B", ¶6)

33. An integrated approach to advertising will necessarily involve use of such media as television, radio, billboards, print, internet, and other media. (App. 3; Ex. "B", ¶6)

34. The cost for a single, one-page newspaper advertisement in a City newspaper of general circulation is $5,000 to $9,000. (App. 3; Ex. "B", ¶7)

35. The cost for a full color advertisement can be even more. (App. 3; Ex. "B", ¶7)

36. The cost for a single billboard advertisement along one of the two interstate highways running through the City ranges between $2,500 and $5,000 per month, depending on the location and size of the billboard. (App. 3; Ex. "B", ¶8)

37. The cost for a single direct mailing to the over 220,000 voters in the City ranges between $50,000 and $80,000 for the cost of the mailer and postage. (App. 3; Ex. "B", ¶9)

38. The cost to produce an average quality political television commercial ranges from between $2,500 to $10,000 for production of the commercial alone. (App. 3; Ex. "B", ¶10)

39. The cost to air a commercial for a thirty (30) second spot during a news broadcast on a local City television station ranges from between $1,000 and $1,500 per showing. (App. 3; Ex. "B";¶10)

40. An effective television campaign designed to reach the more than 220,000 registered voters in the City would need to run at least twelve (12) continuous weeks in order to maintain an adequate frequency rating with voters. (App. 3; Ex. "B", ¶11)

41. The weekly cost for an effective television campaign ranges between $40,000 to $50,000. (App. 3; Ex. "B", ¶11)

42. The cost of a television campaign alone can cost between $480,000 to $600,000. (App. 3; Ex. "B", ¶11)

43. The cost for such media exposure can easily exceed the applicable $174,720 spending limit under the City Charter. (App. 3; Ex. "B";¶11)

### The October 2, 2001 Mayoral Election

44. Elections for City offices in Albuquerque are nonpartisan and are held in odd-numbered years. (Stipulation, ¶ 17)

45. The City held a municipal election on October 2, 2001 for certain city offices, including the office of mayor. (Stipulation, ¶ 18)

46. A total of eight (8) candidates sought the office of mayor in the October 2, 2001 mayoral election. (Stipulation, ¶ 19)

47. The official and certified results of the October 2, 2001 mayoral election are as follows:

| | | |
|---|---|---|
| A. | Jim R. Baca | 10, 999 votes |
| B. | Martin J. Chavez | 30,292 votes |
| C. | James B. Lewis | 6, 747 votes |
| D. | Alan B. Armijo | 2,570 votes |
| E. | Richard ("Rick") W. Homans | 9,737 votes |
| F. | Bob Schwartz | 27,490 votes |
| G. | Mike McEntee | 11,176 votes |

H. Kermit D. Vincent                108 votes

(Stipulation, ¶ 20)

48.     Martin J. Chavez was elected City mayor in the October 2, 2001 mayoral election with 30.56% of the vote. (Stipulation, ¶ 21)

49.     Out of 235,152 registered voters, a total of 99,119 voted in the October 2, 2001 City mayoral election, which is 42.14% of registered voters. (Stipulation, ¶ 24)

50.     Out of 235,152 registered voters, a total of 99,695 voted in the October 2, 2001 City municipal election, which is 42.39% of registered voters. (Stipulation, Ex. "A")

51.     Since 1974, voter turnout in City municipal elections has ranged from a high of 51.65% in the June 18, 1974 run-off election to a low of 16.95% in the general election of 1999, the year that spending limits were restored. (Stipulation, Ex. "A"; Stipulation, ¶ 15)

52.     No campaign spending limits were in effect for the October 7, 1997 and the October 2, 2001 City municipal elections. (Stipulation, ¶ 14; *Homans v. City of Albuquerque*, 264 F.3d 1240, 1245 (10th Cir. 2001))

53.     Based upon the voter turnout statistics for City municipal elections from 1974 through October 2001, campaign spending limits have no apparent negative effect on voter turnout. (Stipulation, Ex. "A")

### Mayoral Candidate Contributions and Expenditures

54.     Article XIII, § 4(c) of the City Charter requires candidates in municipal elections to publicly disclose campaign contributions and expenditures by filing four (4) statements, signed under oath, with the following information:

A. The total of all contributions;

B. The name and residential street address of each contributor, the contributor's principal business occupation, the name and address of the contributor's employer, and the nature of the contributor's or contributor's employer's business, together with the total cumulative cash value contributed by the contributor, when that amount equals or exceeds $25 for the office of Councilor or to a Measure Finance Committee, and $100 for the office of Mayor.

C. All expenditures made on behalf of the campaign, including any reimbursements and the nature thereof, and the name and address of the person or business to whom payment was made.

(Stipulation, ¶ 28)

55. According to the disclosure statements filed by the eight (8) candidates for City mayor in the October 2, 2001 election, the candidates received and expended the following amounts:

### A. Jim R. Baca

Contributions: $333,937.00

Expenditures: $341,035.08

### B. Martin J. Chavez

Contributions: $421,753.25

Expenditures: $421,753.25

### C. James B. Lewis

Contributions: $61,541.17

Expenditures: $61,541.18

### D. Alan B. Armijo

Contributions: $51,514.09

| | |
|---|---|
| Expenditures: | $51,603.39 |

**E.  Richard ("Rick") W. Homans**

| | |
|---|---|
| Contributions: | $579,043.17 |
| Expenditures: | $595,349.46 |

**F.  Bob Schwartz**

| | |
|---|---|
| Contributions: | $156,003.97 |
| Expenditures: | $154,683.59 |

**G.  Mike McEntee**

| | |
|---|---|
| Contributions: | $173,699.65 |
| Expenditures: | $159,580.85 (Not including reported in kind contributions of $13,731.92) |

**H.  Kermit D. Vincent**

| | |
|---|---|
| Contributions: | $1448.00 |
| Expenditures: | $1088.00 (Not including reported in kind contributions of $360.00) |

(Stipulation, ¶29)

56. City mayoral candidates Jim R. Baca, Martin J. Chavez and Homans all exceeded the $174,720 spending limit under Article XIII, §4(d)(2) of the City Charter in the October 2, 2001 municipal election. (Stipulation, ¶29 and Ex. "D", "E" and "H")

11

57. City mayoral candidate Robert Schwartz did not exceed the $174,720 spending limit under Article XIII, §4(d)(2) of the City Charter in the October 2, 2001 municipal election, but came in second in the mayoral election with 27,490 votes or 27.73% of the votes cast. (Stipulation, ¶29 and Ex. "I")

58. The mayoral candidate spending the most money in the October 2, 2001 mayoral election did not win the office of mayor. (Stipulation, ¶¶ 20 and 29)

59. There were seven (7) candidates in the October 7, 1997 mayoral election. (App. 11 and 12)

60. In the October 7, 1997 mayoral election, the candidate spending the most money did not win the office of mayor. (App. Ex. 10; ¶ 1, and App. 11 and 12)

61. There is no apparent correlation between the amount of money spent in campaigns by City mayoral candidates and a candidate's success in the election. (Stipulation, ¶¶ 20 and 29 and App. Ex. 10; ¶ 1, and App. 11 and 12)

62. With seven (7) candidates in the October 7, 1997 mayoral race and eight (8) candidates in the October 2, 2001 mayoral race, there is no apparent negative effect on candidate participation as a result of the absence of campaign spending limits for the office of mayor. (Stipulation, ¶19 and Exhibits 11 and 12)

63. Jim R. Baca was the incumbent mayor in the October 2, 2001. (App. 10, ¶1)

64. Jim R. Baca came in fourth out of a field of eight (8) candidates in the October 2, 2001 City mayoral election. (Stipulation, ¶¶ 19 and 20)

65. Jim R. Baca had the third highest in campaign expenditures in the October 2, 2001 mayor election. (Stipulation, ¶29)

66. Jim R. Baca, incumbent City mayor, was defeated in the October 2, 2001 City mayoral election. (Stipulation, ¶¶ 20, 21 and App. 10, ¶ 1)

67. The absence of campaign expenditure limitations in the October 2, 2001 City mayoral election did not place challenging candidates at a disadvantage with respect to the incumbent mayor in their ability to raise funds for their respective campaigns. (Stipulation ¶29 and App. 10,¶1)

68. The absence of campaign expenditure limitations in the October 2, 2001 City mayoral election did not afford the incumbent mayor with any apparent advantage in terms of his ability to raise money or to garner the most votes in the October 2, 2001 mayoral election. (Stipulation ¶¶ 20 and 29; App.10, ¶1)

69. The conclusions in the studies of Defendants' experts with respect to the impact of spending on federal congressional and senatorial races are not applicable to City municipal elections.

### Absence of Campaign Expenditure Limits on Other Elected Offices in New Mexico

70. New Mexico elects its governor, the chief executive officer of the state, every four (4) years. (Stipulation, ¶ 38)

71. There are no campaign expenditure limitations for the office of governor of the State of New Mexico. (Stipulation, ¶ 39)

72. New Mexico's legislature is made up of a state senate and state house of representatives. (Stipulation, ¶ 40)

73. The New Mexico state senate is comprised of no more than forty-two (42) members elected from single member district. (Stipulation, ¶ 41)

74. The New Mexico house of representatives is composed of no more than seventy (70) members elected from single member districts. (Stipulation, ¶ 42)

75. New Mexico has no campaign contributions and expenditure limitations with respect to candidates for the New Mexico state senate nor the New Mexico state house of representatives. (Stipulation, ¶ 43)

76. The City is in Bernalillo County, New Mexico. (Stipulation, ¶ 44)

77. Bernalillo County, New Mexico is governed by a county commission made up of seven (7) commissioners elected from single member districts. (Stipulation, ¶ 45)

78. There are no campaign contribution and expenditure limitations for candidates for the Bernalillo County Commission. (Stipulation, ¶ 46)

79. There is no evidence that the absence of campaign contribution and expenditure limitations on the other state and local elective offices has undermined the confidence of voters in those other races.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and the subject matter of this lawsuit, and venue is proper in the United States District Court for the District of New Mexico.

2. Defendant City and Clerk are "persons" within the meaning of 42 U.S.C. §1983.

3. Defendants City and Clerk acted under the color of law and their respective acts and omissions constitute state action under 42 U.S.C. §1983.

4. Although the mayoral election in question has taken place, the constitutional issues presented in this case are capable of repetition, yet may evade review unless the Court makes a determination on the constitutionality of Article XIII, §4(d)(2) of the City Charter.

5. The First Amendment of the United States Constitution provides:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and petition the Government for a redress of grievances.

U. S. Const., Amendment I

6. In *Buckley v. Valeo*, 424 U.S. 1, 46 L.Ed.2d. 659, 96 S.Ct. 612 (1976), the United States Supreme Court declared unconstitutional: (1) limitations on independent expenditures on behalf of candidates; (2) limitations on candidate's expenditures from personal funds; and (3) ceilings on overall campaign expenditures. *Id.* at 58-59. In striking down these unconstitutional restrictions, the Supreme Court stated:

> A restriction on the amount of money a person or group can spend on political communication during a campaign necessarily reduces the quantity of expression by restricting the number of issues discussed, the depth of their exploration, and the size of the audience reached. This is because virtually every means of communicating ideas in today's mass society requires the expenditure of money . . . the electorate's increasing dependence on television, radio and other mass media for news information has made these expensive modes of communications indispensable instruments of effective political speech.

*Buckley v. Valeo*, 424 U.S. at 19.

7. The expenditure limitations under Article XIII §4(d)(2) of the City Charter violate the First and Fourteenth Amendments to the Constitution of the United States by imposing unconstitutional limitations on fundraising and expenditures by candidates for the office of mayor of the City.

8. This Court has supplemental jurisdiction over Homans' state law claims pursuant to 28 U.S.C. §1367.

9. Article II, §17 of the New Mexico Constitution provides as follows:

> Every person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press. In all criminal prosecutions for libels, the truth may be given in evidence to the jury; and if it shall appear to the jury that the matter charged as libelous is true and was published with good motives and for justifiable ends, the party shall be acquitted.

N.M. Const., Art. II, §17

10. The expenditure limitations under Article XIII, §4(d)(2) of the Albuquerque City Charter violate the guaranties of freedom of speech under Article II, §17 of the New Mexico Constitution.

11. Article II, §3 and §8 of the New Mexico Constitution protect the rights of self-government and free and open elections.

12. Article VII, §2 and §3 of the New Mexico Constitution establish the qualifications for elective state office and municipal office.

13. The expenditure limitations under Article XIII, §4(d)(2) of the City Charter violate the provisions of Article II, §3 and §8 and Article VII, §2 and §3 of the New Mexico Constitution.

14. Homans is entitled to a judgment in his favor declaring the expenditure limitations under Article XIII, §4(d)(2) of the City Charter unconstitutional under the United States Constitution and the Constitution of the State of New Mexico.

15. Homans has no adequate remedy at law because an action for money damages will not compensate Homans for the loss of his constitutional rights under the First and Fourteenth Amendments of the United States Constitution and under Article II, §2, §3, §17 and Article VII §2 and §3 of the New Mexico Constitution. Injunctive relief is therefore an appropriate remedy.

16. Homans is entitled to a permanent injunction enjoining the City and Clerk from enforcement of the expenditure limitations under Article XIII, §4(d)(2) of the City Charter.

17. Homans is entitled to an award of his attorney's fees pursuant to 42 U.S.C. §1988.

18. Homans is entitled to his costs incurred in this action.

19. To the extent that a finding of fact hereunder is more properly a considered conclusion of law or vice versa, then said finding shall be deemed a conclusion and said conclusion shall be deemed a finding.

Respectfully submitted:

KELEHER & McLEOD, P.A.

By: _____
Thomas C. Bird
Richard L. Alvidrez
P.O Drawer AA
Albuquerque, New Mexico 87103
(505) 346-4646

THIS WILL CERTIFY that a true and correct
copy of the foregoing pleading was :

**Mailed to:**
Daniel E. Ramczyk
Randy M. Autio
City of Albuquerque
Post Office Box 2248
Legal Department
Albuquerque, NM 87103-2248

**Mailed to:**
Brenda Wright
John C. Bonifaz
National Voting Rights Institute
One Broomfield Street, Third Floor
Boston, MA 02108

This 4th day of March 2002

_____
Thomas C. Bird
Richard L. Alvidrez

Jec0562

17

THE EXHIBITS ATTACHED TO THIS PLEADING ARE TOO VOLUMINOUS TO SCAN. SAID EXHIBITS ARE ATTACHED TO THE ORIGINAL PLEADING IN THE CASE FILE WHICH IS LOCATED IN THE RECORDS DEPARTMENT, U.S. DISTRICT COURT CLERK'S OFFICE.