IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RICK HOMANS,

    Plaintiff,

vs.                                                           No. CIV 01-917 MV/RLP

THE CITY OF ALBUQUERQUE, a Municipal
Corporation and MARGIE BACA ARCHULETA,
in her capacity as Clerk of the City of Albuquerque,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's Petition for Attorney's Fees and Billable Expenses, filed September 19, 2002 **[Doc. No. 50]**. The Court, having considered the petition, briefs, relevant law and being otherwise fully informed, finds that Plaintiff's petition is well-taken and will be **GRANTED.**

## BACKGROUND

Rick Homans was a duly qualified candidate for Mayor in the City of Albuquerque, New Mexico (the "City"), whose name appeared on the printed ballot for the mayoral election held October 2, 2001. Mr. Homans brought this action seeking a declaratory judgment that Article XIII, Section 4(d)(2) of the Albuquerque City Charter (the "City Charter") violates the First Amendment to the United States Constitution. That Section states:

    (d)     No candidate shall allow contributions or make expenditures in excess of the following for any election:

                               \*     \*     \*

(2) To a candidate for the office of Mayor contributions or expenditures equal to twice the amount of the annual salary paid by the City of Albuquerque to the Mayor as of the date of filing of the Declaration of Candidacy.

The annual salary of the Mayor in office at the time of the October 2, 2001 election was $87,360. Therefore, the expenditure limitation for the October 2, 2001 mayoral election was $174,720. Under the terms of the City Charter, Article XIII, Section 4(d)(2), Mr. Homans was subject to a $500 fine for each violation of the expenditure limitations, and, if he had won the election, would have been subject to potential public reprimand and removal from office by the City Council for any such violation.

Prior to Mr. Homans's registration of his candidacy for Mayor, a state court issued a preliminary injunction which prevented enforcement of the expenditure limitations at issue herein. When Mr. Homans received informational materials from the City regarding his candidacy, he was verbally informed by a City employee that the expenditure limits would not be enforced. Three voters had brought the state court action. A candidate intervened in the action and argued that the voters lacked standing to bring suit. The state court agreed and gave the candidates twenty days to join the lawsuit before it would be dismissed for lack of standing. Neither Mr. Homans nor any other candidate joined, and the case was dismissed on August 15, 2001.

Plaintiff commenced the instant action, filing a complaint for declaratory judgment and injunctive relief **[Doc. No. 1],** on August 10, 2001. Thereafter, on August 13, 2001, Plaintiff filed a motion for a preliminary injunction and a temporary restraining order **[Doc. No. 3]**, seeking an order enjoining enforcement of the expenditure limitation provision of the City Charter. In support of his motions, Mr. Homans claimed that the City Charter was an unconstitutional infringement on his First Amendment rights. He contended that, in reliance on a City employee's assertion that the limits

would not be enforced in this election, he had already exceeded the City Charter's expenditure limits. He further claimed that if the expenditure limits were not enjoined, he would have to stop campaigning and close his campaign headquarters. The City maintained that the City Charter was a constitutional limitation on campaign spending and that enforcement of the limitation would not cause Mr. Homans irreparable injury.

This Court held a hearing on August 20, 2001, for the purpose of determining whether Mr. Homans was entitled to temporary injunctive relief. Based on the record before the Court at that time, the Court found that Mr. Homans had shown a likelihood of success on the merits of his claim that the City Charter violated the First Amendment, that he would suffer irreparable harm if enforcement of the City Charter were not enjoined, and that the balance of harms and the public interest weighed in his favor. Thus, the Court granted Mr. Homans's motion for temporary injunctive relief **[Doc. No. 17]**.

The Court held another hearing on August 30, 2001, for the purpose of determining whether Mr. Homans was entitled to preliminary injunctive relief. By this time, the Court had had the opportunity to review the evidence submitted by the City in opposition to Mr. Homans's motion. At the hearing, the Court heard the testimony of Mr. Larry Makinson, an expert on election reform from the Center for Responsive Politics. The Court also heard argument from counsel for both parties on the issue of whether Mr. Homans was entitled to preliminary injunctive relief.

After the second hearing, the Court denied Mr. Homans's request for a preliminary injunction, finding that Mr. Homans had not shown a likelihood of prevailing on the merits ("Preliminary Injunction Memorandum Opinion") **[Doc. No. 21]**. The Court determined that *Buckley v. Valeo*, 424 U.S. 1 (1976), did not present an absolute bar to expenditure limits, and that the relevant City Charter

expenditure provision was narrowly tailored to meet the compelling governmental interests of preserving the public faith in democracy and reducing the appearance of corruption. The Court further found that Mr. Homans had made a sufficient showing of irreparable harm, that the balance of harms weighed in favor of Mr. Homans, and that the public interest favored the City.

On September 4, 2001, Mr. Homans filed an interlocutory appeal of this Court's denial of a preliminary injunction **[Doc. No. 25]**. Mr. Homans also filed with the Tenth Circuit Court of Appeals an emergency motion for an injunction pending appeal, and an alternative motion for suspension of the appellate rules and expedited review of the district court's denial of his application for a preliminary injunction. In a *per curiam* order dated September 6, 2001, the Tenth Circuit granted Mr. Homans's emergency motion for an injunction pending appeal, and enjoined the City from further enforcing Article XIII, Section 4(d)(2) of the City Charter. The Tenth Circuit found that Mr. Homans had demonstrated a substantial likelihood of success on the merits of his First Amendment claim that campaign expenditure limitations are unconstitutional. Additionally, the Tenth Circuit agreed with this Court's findings that Mr. Homans had made a sufficient showing of irreparable harm and that the balance of harms weighed in favor of Mr. Homans.

Thereafter, based on the parties' agreement, the Tenth Circuit suspended the appeal pending entry of final judgment in this Court **[Doc. No. 29]**. The parties then filed a joint motion for stipulated admission of evidence, briefing schedule and expedited determination on the merits **[Doc. No. 35]**, requesting, *inter alia*, that this matter be decided on the merits without a trial based upon the evidentiary record developed in connection with Mr. Homans's motion for temporary restraining order and motion for preliminary injunction. The parties further agreed to the admission of the evidence and factual stipulations set forth in the parties' joint stipulation for admission of certain

evidence for expedited determination on the merits ("Stip.") **[Doc. No. 36]**, which was filed simultaneously with the joint motion.

This Court entered Findings of Fact and Conclusions of Law dated August 22, 2002, granting the parties' joint motion and holding that, under the Tenth Circuit's interpretation of *Buckley v. Valeo*, 424 U.S. 1 (1976), Plaintiff was entitled to (1) a declaratory judgment that Article XIII, Section 4(d)(2) of the Albuquerque City Charter violates the First Amendment to the United States Constitution and (2) a permanent injunction enjoining the enforcement of the expenditure limitations under Article XIII, Section 4(d)(2) of the Albuquerque City Charter. Accordingly, by Amended Judgment dated August 23, 2002, the Court granted Plaintiff (1) a declaratory judgment that Article XIII, Section 4(d)(2) of the Albuquerque City Charter violates the First Amendment to the United States Constitution and (2) a permanent injunction enjoining the enforcement of the expenditure limitations under Article XIII, Section 4(d)(2) of the Albuquerque City Charter.

Thereafter, on September 19, 2002, Plaintiff brought the instant petition under 42 U.S.C. §1988(b) for attorney's fees and billable expenses **[Doc. No. 50]**. Defendants filed their response in opposition on October 22, 2002 **[Doc. No. 60]**. Plaintiff's reply followed on November 19, 2002 **[Doc. No. 61]**.

## **STANDARD**

Title 42 U.S.C. §1988(b) provides that, in certain federal civil rights actions, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. §1988(b). In addition to fees and expenses, under 28 U.S.C. §1920, a prevailing party in a civil rights action is also typically entitled to costs. *See Case v. Unified School Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998). Once a civil rights plaintiff has

demonstrated that he or she is a prevailing party, the court's discretion in awarding fees is narrow. *See Robinson v. City of Edmond*, 160 F.3d 1275, 1280 (10th Cir. 1998). Tenth Circuit precedent establishes that "when a plaintiff prevails in a civil rights suit, the plaintiff ordinarily should not have his vindication of these rights eviscerated by an obligation to pay his attorney's reasonable fees." *Id.*; *see also Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) ("a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances wold render such an award unjust.") (citation omitted).

In order to be awarded attorney's fees, a plaintiff must prove that: (1) he or she was the prevailing party in the proceeding; and (2) his or her fee request is reasonable. *See Robinson*, 160 F.3d at 1280. A plaintiff is considered a prevailing party if he or she "suceed[ed] on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit." *Hensley*, 461 U.S. at 433 (citations omitted). In other words, "a plaintiff 'prevails' when actual relief on the merits of his [or her] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-112 (1992).

Once it is established that a plaintiff was the prevailing party, the court must determine the reasonableness of the plaintiff's fee request. In order to make this determination, the court first must calculate the lodestar amount of a fee. *See Case*, 157 F.3d at 1249. The lodestar amount is determined by multiplying the number of attorney hours reasonably expended by a reasonable hourly rate. *See Id.* A plaintiff "is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee." *Robinson*, 160 F.3d at 1281. Accordingly, "'[o]nce an applicant for a fee has carried the burden of showing that the claimed rate and number of hours are reasonable, the resulting

product is presumed to be a reasonable fee as contemplated by Section 1988.'" *Id.* The court is not charged with the task of identifying and justifying "every hour allowed and disallowed, as doing so would run counter to the Supreme Court's warning that a 'request for attorney's fees should not result in a second major litigation.'" *Ellis v. University of Kansas Med. Center*, 163 F.3d 1186, 1202 (10th Cir. 1999) (citations omitted).

In connection with the inquiry into the reasonableness of the hours expended on the litigation, the plaintiff bears "the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Case*, 157 F.3d at 1250. The plaintiff's attorneys also must show that they have exercised "billing judgment," which means making a "good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Ellis*, 163 F.3d at 1202 (citations omitted). "Hours that an attorney would not properly bill to his or her client cannot reasonably be billed to the adverse party, making certain time presumptively unreasonable." *Case*, 157 F.3d at 1250. The district court has a corresponding obligation to "carefully scrutinize the total number of hours reported to arrive at the number of hours that can reasonably be charged to the losing party, much as a senior partner in a private firm would review the reports of subordinate attorneys when billing clients whose fee arrangement requires a detailed report of hours expended and work done." *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983). Thus, the court may reduce the reasonable hours awarded where an attorney fails to submit precise time records or where the number of hours claimed includes unnecessary, irrelevant and duplicative time. *See Case*, 157 F.3d 1250.

Once the reasonable number of hours has been calculated, the court must decide upon a reasonable hourly rate. A reasonable hourly rate "is the prevailing market rate in the relevant community." *Ellis*, 163 F.3d at 1203 (citations omitted). The prevailing market rate is "the price that is customarily paid in the community for services like those involved in the case at hand." *Id* (citations omitted)*; see also Ramos*, 714 F.2d at 555 ("the court should establish . . . a billing rate for each lawyer based upon the norm for comparable private firm lawyers in the area in which the court sits."). Accordingly, the plaintiff carries the burden of proving that the "'requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Ellis*, 163 F.3d at 1203 (citations omitted). A plaintiff meets this burden by presenting "sworn affidavits that the market command[s] an attorney's hourly rates at a certain level." *Id.* at 1204. The district court is constrained to award rates compatible with such evidence of the market. *See Id.*

An attorney's fee award also should include reasonable expenses incurred in representing a client so long as "such expenses are usually billed in addition to the attorney's hourly rate." *Case*, 157 F.3d at 1257. In order to recover such expenses, the plaintiff's attorneys must establish "the amount of compensable expenses to which they are entitled." *Id.* at 1257-58.

## DISCUSSION

In the instant case, Plaintiff requests an award of attorney's fees and expenses in the amount of $50,720.98. Plaintiff contends that he was the prevailing party in this litigation, as he obtained (1) a judgment invalidating as unconstitutional the challenged campaign spending limit and (2) a permanent injunction against enforcement of the spending limit. In addition, Plaintiff contends that the requested fees and expenses are reasonable. To establish the reasonableness of his fee request,

Plaintiff has submitted billing records based on contemporaneously recorded time sheets and affidavits sworn to by Richard Alvidrez and Thomas Bird, two of the attorneys who have represented him in this action, and Arturo Jaramillo, a New Mexico trial lawyer.

Defendants oppose Plaintiff's fee request. First, Defendants contend that Plaintiff's status as a prevailing party is dependent upon a judgment that has been appealed to the Tenth Circuit and that, accordingly, this Court should delay assessment of a fee award until after the merits judgment has been reviewed on appeal. Case law, however, demonstrates that the district court has jurisdiction to award attorney's fees after a notice of appeal has been filed and before the appellate court has rendered its decision. *See Service v. Board of Public Utilities of Kansas City*, Nos. 83-2206 - 83-2209, 1986 WL 15658, at **1 (D. Kan. Nov. 13, 1986) (holding that court has jurisdiction to award attorney's fees pending appeal); *see also Chavez v. Bennett Propp*, 216 F.3d 1086, 2000 WL 702309, at **1, fn.1 (10th Cir. May 26, 2000) (unpublished disposition) (holding that district judge has jurisdiction over issue of attorney's fees during pendency of an appeal on the merits of the case). Thus, there is no reason for the Court to postpone decision on Plaintiff's fee request. As Plaintiff succeeded on the merits of his constitutional challenge to City's campaign spending limit, Plaintiff was the prevailing party in this litigation for purposes of a fee award under § 1988.

Next, Defendants dispute the reasonableness of the hours expended by Plaintiff's counsel. Defendants argue that Plaintiff is entitled to only 70% to 75% of the fees requested because his attorneys did not exercise appropriate billing judgment to exclude unnecessary or duplicative hours from the fee request. In support of this argument, Defendants allege that: (1) because this case involved three rounds of briefing on essentially the same legal and factual issues, it was unwarranted for Plaintiff's attorneys to spend as much time as they did on the second and third rounds of briefing;

-9-

(2) Plaintiff's attorneys improperly billed for time spent doing general background legal research; and (3) the fee request includes a number of additional, non-compensable or excessive charges.

The Court recognizes that a percentage reduction of the number of hours reasonably expended "is not an erroneous method, so long as there is sufficient reason for its use." *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1203 (10th Cir. 1986). In the instant case, however, there does not appear to be sufficient reason for such a percentage reduction. Plaintiff properly submitted to the Court detailed, contemporaneous time records of the time spent and tasks performed by his attorneys in litigating this action. Plaintiff also has presented evidence that his attorneys did in fact exercise billing judgment, both in determining litigation strategy and in calculating time billed to Mr. Homans. In their affidavits, Mr. Bird and Mr. Alvidrez state that only billable time and expenses were recorded on the billing statements sent to Mr. Homans, and that they tried to litigate this matter efficiently and inexpensively, avoiding fees not necessary for the successful litigation of their client's claims. In his affidavit, Mr. Jaramillo confirms that, based upon his knowledge and experience as a New Mexico trial attorney, the hours expended by Plaintiff's attorneys were reasonable, efficient and necessary for the successful outcome of this case.

Defendants' arguments are insufficient to refute Plaintiff's evidence that the hours billed by his attorneys were reasonable and necessary for the successful prosecution of this action. First, while there were three rounds of briefing in this case, each stage of the litigation involved a different procedural posture and different evidence and arguments and, accordingly, required Plaintiff's attorneys to perform different tasks. The Court finds that it was reasonable for Plaintiff's attorneys to bill a total of 145 hours for briefing the temporary restraining order and the preliminary injunction, the appeal and application for injunction pending appeal and the permanent injunction.

Similarly, while attorneys should not bill for background legal research to familiarize themselves with a general area of the law, it is not unreasonable for attorneys to bill some amount of time to legal research on specific issues unique to a particular motion. Indeed, such a task is integral to the briefing process. In this case, Defendants have identified a total of 17.5 hours billed to legal research. The Court has reviewed the time entries devoted to legal research. Based on this review, the Court finds that the time billed for legal research was reasonable and thus appropriately billed.

Finally, Defendants question Plaintiff's attorneys' billing to the extent that it includes a conference with reporters, uses a minimum unit method of billing and reflects excessive billing for routine or non-lawyer tasks. With the exception of Defendants' identification of one instance of duplicate billing, which instance has been conceded and corrected by Plaintiff, this Court does not find that Defendants have identified any significant departures from the normal billing practices of New Mexico attorneys. Accordingly, none of Defendants' complaints warrants a percentage reduction in the reasonable hours billed.

Defendants do not contest the hourly rates of Plaintiff's attorneys, which were their standard hourly rates.[1] In his affidavit, Mr. Bird asserts that, based upon the rates charged by other attorneys with equivalent experience practicing in New Mexico, his hourly rate and that of his partner are reasonable in the Albuquerque legal market. Similarly, Mr. Jaramillo's affidavit states that the hourly rates for Mr. Alvidrez, Mr. Bird and their associate, Megan Dimond, are very reasonable and well within the typical range of hourly rates charged by trial attorneys of their experience and competence in New Mexico. Based upon this uncontroverted evidence of the prevailing market rate in the New

---

[1] Mr. Alvidrez's hourly rate was $150 through June 2002 and $160 from July 2002 forward. Mr. Bird's hourly rate was $160 through June 2002 and $170 from July 2002 forward. The work of an associate, Megan Dimond, was billed at $110 an hour.

Mexico community, the Court finds that the hourly rates of Plaintiff's attorneys represent reasonable hourly rates. Accordingly, Plaintiff's fee award is properly calculated using these rates.

Defendants contest Plaintiff's request for $3,122.95 in expenses, which expenses represent copying, long distance telephone and Westlaw research. Specifically, Defendants argue that Plaintiff has failed to demonstrate the reasonableness of these expenses. Plaintiff, however, has submitted evidence establishing the amount of expenses which his attorneys incurred on his behalf, the necessity of such expenses and the fact that such expenses were charged in accord with his attorneys' usual billing practices. Both Mr. Bird and Mr. Alvidrez state in their affidavits that these expenses were reasonable and necessary, and are not normally absorbed as part of their firm's overhead. Mr. Jaramillo confirms that the expenses incurred by Plaintiff in this litigation were reasonable and necessary. Accordingly, the Court finds that Plaintiff's attorney's fee award should include $3,122.95, which amount represents the reasonable expenses incurred by Plaintiff's attorneys.

## CONCLUSION

Plaintiff has established that he was the prevailing party in this litigation. In addition, Plaintiff has established the reasonableness of the hours billed by his attorneys and his attorneys' billing rates, thereby establishing that his fee request is reasonable. Finally, Plaintiff has established that the expenses incurred on his behalf were reasonable. Accordingly, Plaintiff is entitled to a fee award in the amount of $50,720.98.

**IT IS THEREFORE ORDERED** that Plaintiff's Petition for Attorney's Fees and Billable Expenses is **GRANTED**.

**DATED** this 14th day of May, 2003.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

Attorneys for Plaintiff:
Thomas C. Bird
Richard L. Alvidrez

Attorneys for Defendants:
Randy M. Autio
Daniel E. Ramczyk

Attorneys for National Voting Rights Institute:
Brenda Wright
Lisa J. Danetz
John C. Bonifaz